**LEISNOI, INC., an Alaska corporation,**
**Appellant,**

v.

**Omar STRATMAN, Appellee.**

No. S–7339.

Supreme Court of Alaska.

June 5, 1998.

---

Edgar Paul Boyko and John Richard Fitzgerald, Edgar Paul Boyko & Associates, Anchorage, for Appellant.

Jerald M. Reichlin, Law Offices of Jerald M. Reichlin, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. *INTRODUCTION*

Omar Stratman holds a grazing lease on lands owned by Leisnoi, Inc., a village corporation established under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601 *et seq.* (1971). Leisnoi appeals the superior court's dismissal of its request for a writ of forcible entry and detainer (FED) against Stratman. Leisnoi also appeals the superior court's award of attorney's fees to Stratman. We reverse in part, vacate in part, and remand.

### II. *FACTS AND PROCEEDINGS*

Omar Stratman is the holder of a grazing lease that allows him to graze cattle on 15,870 acres on Kodiak Island. This land is owned by Leisnoi. Stratman originally leased this land and an additional 4,530 acres, when they were owned by the federal government and managed by the Bureau of Land Management (BLM). He held a federal grazing lease, # A–059264, issued under the Alaska Livestock Grazing Act, 43 U.S.C. § 316 *et seq.* (1994).

In December 1966 the State selected the 20,400 acres leased by Stratman, pursuant to the Alaska Statehood Act. The State received tentative approval from the federal government for its selections, and Stratman's federal lease was canceled by the BLM with the understanding that the State would issue its own grazing lease for the lands. The State decided not to issue a new lease document, however. Instead, it wrote Stratman that "[t]he State will not issue a new lease but will administer the lease under the terms and conditions of the former lease and in a manner that will not deprive you of any rights or benefits which you held under the Federal

lease." The lease was renumbered ADL 36306. In December 1980 the State renewed ADL 36306 through the year 2001.

The 15,870 acres at issue were never conveyed to the State, however, because of the passage of ANCSA. As the ANCSA corporation for the Native Village of Woody Island, Leisnoi was allowed in January 1976 to select this land. Because the lands selected by Leisnoi were lands previously "selected by, or tentatively approved to, but not yet patented to, the State under the Alaska Statehood Act," they had to be withdrawn from selection by the State, pursuant to subsection 11(a)(2) of ANCSA, 43 U.S.C. § 1610(a)(2).[1] The BLM rescinded its tentative approval and voided State selection of these lands in August 1985.

In November 1985 the lands were *interim* conveyed to Leisnoi. The interim conveyance document provided that the conveyance was "subject to" Stratman's pre-existing grazing lease, as required by subsection 14(g) of ANCSA. The State and the federal government both waived lease administration of these lands in favor of Leisnoi. The State instructed Stratman to make *pro rata* rental payments to Leisnoi "for [the 15,870 acres] transferred to them."

Leisnoi alleged that Stratman committed various breaches of the lease; it sought an order evicting Stratman from, and entitling Leisnoi to possession of, the leased lands it owns. Leisnoi filed a combined FED and declaratory judgment action against Stratman in the superior court. The superior court denied Leisnoi's FED request, basing its denial on two separate grounds. First, the court found that Stratman's lease "cannot be terminated without providing Mr. Stratman with the due process guaranteed by Article I, section 7 of the Alaska Constitution,[2] under *McCarrey v. Commissioner*, 526 P.2d 1353 (Alaska 1974)," and that "[w]ithout a termination of the lease Leisnoi does not enjoy a right of possession and so

---

1. ANCSA sections correspond to the sections set out in 43 U.S.C. § 1601 *et seq.*, but the numbering system is not the same as that in the U.S.C. This opinion refers to the ANCSA sections. For a cross-reference of ANCSA numbering and the U.S.C. sections, *see* table at p. 1 of ANCSA.

2. Article I, section 7 of the Alaska Constitution provides, in part, that "[n]o person shall be deprived of life, liberty, or property without due process of law."

the FED request must be denied." Second, the court found that "[t]he land description in Leisnoi's complaint is insufficient to form the basis of a judgment or order," as it did not meet the requirements of Alaska Civil Rule 85.[3] Leisnoi appeals.

## III. DISCUSSION

### A. Standard of Review

This appeal presents questions of law requiring the interpretation of the due process clause of the Alaska Constitution, subsection 14(g) of ANCSA, and Alaska Civil Rule 85(a)(1). On questions of law, we do not defer to the lower court's decision, but will adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. The Superior Court Should Have Provided the Hearing Procedures and Due Process Required under the Lease.

ADL 36306 was the State grazing lease held by Stratman. Stratman's original lease, federal grazing lease # A–059264, was canceled in 1967, and ADL 36306 was created with the State as lessor and Stratman as lessee. ADL 36306 incorporated by reference the terms of the federal grazing lease. However, when the State waived administration of the lease as to the 15,870 acres at issue, ADL 36306 was effectively severed into two distinct leases. One, for 4,530 acres, continues to be administered by the State and is not at issue in this case. The other, for 15,870 acres, is now administered by Leisnoi.

▮ ANCSA subsection 14(g) guarantees Stratman's rights under the pre-existing federal grazing lease, as follows:

All conveyances made pursuant to this Act shall be subject to valid existing rights. Where, prior to patent of any land or minerals under this Act, a lease . . . has been issued for the surface or minerals

covered under such patent, the patent shall contain provisions making it subject to the lease . . . and the right of the lessee . . . to the complete enjoyment of all rights, privileges, and benefits thereby granted to him.

Such rights necessarily include not only those contained in the lease itself, but also the right to due process and to the various statutory protections and guarantees that are incidental to the possession of a grazing lease under the Alaska Livestock Grazing Act (43 U.S.C. § 316 *et seq.*). Of particular importance in the instant case are Grazing Act sections 316g and 316m. Section 316g provides:

Grazing fees

(a) The Secretary shall determine for each lease the grazing fee to be paid. Such fee shall—

(1) Be fixed on the basis of the area leased or on the basis of the number and kind of stock permitted to be grazed;

(2) Be fixed, for the period of the lease, as a seasonal or annual fee, payable annually or semiannually on the date specified in the lease;

(3) Be fixed with due regard to the general economic value *of the grazing privileges,* and in no case shall exceed such value; and

(4) Be moderate.

(Emphasis added.) Section 316m provides:

Hearing and appeals

(a) Any lessee of . . . grazing privileges . . . may procure a review of any action or decision of any officer or employee of the Interior Department in respect of such privileges, by filing with such officer as the Secretary of the Interior may designate of the local land office an application for a hearing, stating the nature of the action or decision complained of and the grounds of complaint. Upon the filing of any such application such officer of such land office shall proceed to review such action or decision as nearly as may be in accordance with the rules of practice then applicable to

---

3. **Rule 85. Forcible Entry and Detainer.**
   (a) . . .
   (1) *Description of Premises.* The premises claimed shall be described in the complaint

with such certainty that the defendant will be distinctly advised of their location so that possession thereof may be delivered according to that description.

applications to contest entries under the public land law. Subject to such rules of practice, appeals may be taken by any party in interest from the decision of such officer to the Secretary.

(b) The Secretary shall take no action which will adversely affect rights under any lease pursuant to this subchapter until notifying the holder of such lease that such action is proposed and giving such holder an opportunity for a hearing.

▌ Though Stratman is entitled to all of the "rights, privileges, and benefits . . . granted to him" under the lease, this does not mean that he is entitled to have the administration of his lease overseen by the state or federal government, notwithstanding the language in 43 U.S.C. § 316 referring to the Secretary of the Interior. The governments of both the State of Alaska and the United States have explicitly waived administration of the lease now owned by Leisnoi. Rather, Leisnoi is required, in administering the lease, to set fees, provide notice, and take all other actions in a manner consistent with the rights accorded Stratman under the lease and under the Alaska Livestock Grazing Act.[4]

▌ We will not require Leisnoi to proceed before a State or federal agency—these want no part of the administration of this lease. Yet due process requires that Stratman receive "notice [and] opportunity to be heard in some meaningful way and to present mitigating circumstances prior to the termination of the lease." *McCarrey v. Commissioner*, 526 P.2d 1353 (Alaska 1974). And, as previously noted, lease fees are determined by statutory criteria and the lessee has a right to a hearing concerning their validity before they may be imposed. *See supra*, p. 17. We conclude that Stratman's due process right under Alaska's constitution, to be heard on the issue whether Leisnoi may appropriately terminate his lease, may be satisfied by the superior court before which the present action was brought.[5] We therefore reverse the superior court's dismissal of Leisnoi's FED action insofar as it was based on Leisnoi's inability to terminate the lease without first providing Stratman due process. On remand, the superior court should make specific findings as to whether Stratman breached the lease, whether Leisnoi validly increased the lease rental, and whether any arrearages are owed by Stratman to Leisnoi. In making these findings the superior court should apply the standards from the Alaska Livestock Grazing Act.[6] With respect to Leisnoi's efforts to raise the lease fee, the superior court should provide the review that would have been provided administratively by the Interior Department and the Secretary of the Interior. The court then should determine, in light of its findings and review, whether and under what circumstances Leisnoi was or will be entitled to terminate Stratman's lease. Once these determinations are made, the court may proceed to determine whether the elements of an FED action or an ejectment action have been satisfied.[7]

C. *The Property Description Was Adequate under Alaska Civil Rule 85(a)(1).*

The superior court concluded that the land description contained in Leisnoi's complaint failed to meet the requirements of Alaska Civil Rule 85(a)(1) and was therefore "insuffi-

---

4. Subsection 14(g) of ANCSA qualifies the interests to which Leisnoi succeeded upon issuance of the patent. Leisnoi did not succeed to all of the interests a private lessor conceivably might have had in a similar lease, but, at most, "to any and all interests of the State . . . as lessor[.]" The State's interests as lessor were limited and defined by the statutory and constitutional due process protections described above.

5. In view of the unique circumstances of this case, in which the court must provide hearings and other due process protections that would have been afforded by the Department of the Interior under the lease, the summary provisions

of the FED statute are inapplicable. *See Thrift Shop, Inc. v. Alaska Mut. Sav. Bank*, 398 P.2d 657 (Alaska 1965) (stating that FED action may be expanded if parties are on notice and not prejudiced).

6. The Alaska Livestock Grazing Act should not be applied in such a way as to require the involvement of the federal government or any State agency. Leisnoi administers this lease.

7. We recognize that the adjudication that we contemplate may take place in two or more stages.

cient to form the basis of a judgment or order." Rule 85(a)(1) requires, in FED actions, that

> [t]he premises claimed shall be described in the complaint with such certainty that the defendant will be distinctly advised of their location so that possession thereof may be delivered according to that description.

Alaska R. Civ. P. 85(a)(1). Leisnoi concedes that the property description contained in its complaint "was simply that of the grazing lease." It contends, however, that this description is "specific and sufficient."

■ The grazing lease encompasses at least two parcels of land that are not subject to Leisnoi's FED claim: the 4,530 acres of the leasehold that remained in State ownership, and Stratman's homestead, to which Leisnoi withdrew all claims on the morning of trial. However, it is abundantly clear that Stratman, the "defendant" as contemplated in Rule 85(a)(1), knows what lands are at issue in this action. They are those 15,870 acres patented to Leisnoi, not including either Stratman's homestead or the 4,530 acres remaining in State ownership. This litigation has gone on, in one form or another, for over twenty years; there is no room for Stratman to claim that he is unaware of what is at stake. We therefore reverse the superior court's determination that this FED action must be dismissed due to a defective description. On remand, the superior court should allow Leisnoi to amend its FED complaint to accurately describe the 15,870 acres now in question in this action.

### D. *The Superior Court's Award of Attorney's Fees Is Vacated.*

Leisnoi argues that the superior court should have awarded attorney's fees to Leisnoi, instead of Stratman, because, on the morning of trial, Stratman stipulated to the dismissal with prejudice of an adverse possession counterclaim against Leisnoi. Leisnoi argues that the value of the lands that had their title called into question by this counterclaim far exceeds the value of the lease to graze those lands, and that Leisnoi therefore "prevailed on the main issue in the litigation, which was the claim that had the highest monetary value at stake."

■ This court will not disturb a Civil Rule 82 fee award unless there has been a clear abuse of discretion, which is "established only where it appears that the court's determination is manifestly unreasonable." *Adoption of V.M.C.,* 528 P.2d 788, 795 (Alaska 1974). "Like the award itself, the actual determination of who the 'prevailing' party is is also within [the broad] discretion" of the trial court. *Id.*

Prior to this court's reversal, the superior court's determination of prevailing party status was not a clear abuse of discretion. Both Leisnoi and Stratman raised what appear to have been overly ambitious claims against each other, only to withdraw these claims on the morning of trial. Leisnoi abandoned its claim to Stratman's homestead, and Stratman agreed to the dismissal of his adverse possession counterclaim with prejudice. Having eliminated these less tenable claims, the parties were able to concentrate on the FED claim, the principal issue before the court. Because we have remanded this issue to the superior court, the award of attorney's fees may or may not ultimately be appropriate. We therefore vacate the superior court's award of attorney's fees. The award of attorney's fees will ultimately depend upon which party prevails on remand on the right-to-possession issue.

## IV. *CONCLUSION*

The superior court judgment is REVERSED in part, VACATED in part, and the case is REMANDED for further proceedings consistent with this opinion.